UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN TAYLOR,

        Petitioner,

                                     Case No. 12-CV-11665

v.

                                     HON. MARK A. GOLDSMITH

JOHN PRELESNIK,

        Respondent.

_____/

**OPINION AND ORDER**
**(1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Dkts. 9, 12),**
**(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3)**
**DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.  INTRODUCTION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner John Taylor was convicted after a bench trial in the Wayne Circuit Court of armed robbery, under Mich. Comp. Laws § 750.529.  The trial court sentenced him to seven-to-20 years.  See Tr. Ct. Docket Sheet at 3 (Dkt. 6-1).  The amended petition raises four claims: (i) Petitioner was denied the right to counsel at a pretrial identification procedure, (ii) there was insufficient evidence presented at trial to sustain Petitioner's conviction, (iii) Petitioner was denied the effective assistance of counsel, and (iv) Petitioner's sentence was enhanced based on facts not proven to a jury beyond a reasonable doubt.  Am. Pet. at 6 (cm/ecf page) (Dkt. 9).  The Court also granted Petitioner's second motion to amend the petition (Dkt. 12), which sought to include an additional claim that the trial court relied on a theory of guilt that had not been advanced by the prosecutor at his bench trial.  6/10/2014 Order (Dkt. 17).

1

For the reasons discussed fully below, the Court denies the amended petition with prejudice.

## II.  BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009) (referring to the relevant facts relied upon by the Michigan Court of Appeals verbatim and assuming that the facts were presumed correct on habeas review):

> The complainant and two of his friends stopped at a gas station on Detroit's west side in the early morning hours of May 31, 2009. The complainant parked at one of the gas pumps and got out of his vehicle. His friends remained in the car. The complainant went into the gas station and then came back outside to start pumping gas. As he came out of the gas station, he noticed two men walking around the corner. Then, as the complainant started pumping gas, he heard a voice. He turned and saw that the two men had reappeared from behind the gas station. One of the men, later identified as defendant, pointed a gun at the complainant's face. The man with the gun did not say anything to the complainant, but the complainant testified that he "knew what [the man] was there for." The complainant reached into his pocket and took out approximately $200 in cash. The man with the gun reached for the money, and the complainant gave it to him. The complainant testified that he had a good opportunity to look at the man's face for about one or two seconds during the incident, at a distance of only three or four feet. The other man remained near the passenger side of the complainant's car during the incident. After the robbery, both men ran back around the gas station and disappeared from the complainant's sight.
>
> The complainant and his friends called 911. The police met them about 15 minutes later at a nearby restaurant. The complainant gave a description of the man who had robbed him. The complainant told the police that the robber was shorter than he was, "looked younger," "had a short haircut," and appeared to have weighed "[o]ver 200 pounds." About seven days later, the complainant went to the police station to provide a written

statement. In his written statement, the complainant described the robber as an African-American male, approximately 16 years old. The complainant was then asked to view six different photo arrays. Before having viewed all six, the complainant positively identified defendant as the man who had robbed him at the gas station. The complainant testified that he had remembered the shape of defendant's eyes and the structure of defendant's face, and that he had relied on these characteristics to identify defendant's photograph. Indeed, although defendant had more facial hair and appeared to be older than 16 in the photograph, the complainant testified that he had identified defendant's photo on the basis of facial structure rather than age or the presence of facial hair. The complainant also positively identified defendant in court.

Detroit Police Officer Paul Pesmark testified that he had prepared the six photographic arrays that the complainant viewed. Pesmark testified that defendant had become a person of interest because of his involvement in other robberies in the area, and that defendant's photograph was therefore included in one of the six arrays. Pesmark was present while the complainant viewed the six arrays, and testified that the photographs were not presented in a suggestive manner. The six arrays were presented to defendant one-by-one, and defendant's photograph was only included in one of the six arrays. Pesmark testified that the complainant positively identified defendant's photograph "right away." Although defendant's photo was included in the second or third array the complainant viewed, Pesmark asked the complainant to view the remaining arrays as well. After having finished looking at all six arrays, the complainant once again confirmed his identification of defendant as the man who had robbed him.

The police obtained video footage that was taken by the gas station's surveillance cameras on the date of the robbery. The video footage was admitted into evidence and was viewed by the court. The video footage showed the complainant's car parking near one of the gas pumps at approximately 1:20 a.m., and also showed the robbery as it transpired. Detroit Police Sergeant Ron Gibson testified that he was a forensic video technician and that he had reviewed the surveillance video footage. The footage showed that one of the two men approached the complainant and pointed what appeared to be a handgun at the complainant. As a result of the poor video quality, Gibson could not confirm that the man who approached the complainant with what appeared to be a handgun

3

was defendant. However, Gibson opined that the images of the man were consistent with defendant's general size and build.

Following trial, the court found defendant not guilty of one count of possession of a firearm by a felon (felon-in-possession), MCL § 750.224f, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL § 750.227b. Specifically, the trial court observed that while defendant brandished an object that looked like a firearm, the evidence was insufficient to establish beyond a reasonable doubt that the object was in fact a real gun. However, as noted earlier, the trial court found defendant guilty of armed robbery, MCL § 750.529, and sentenced him to 7 to 20 years in prison.

People v. Taylor, No. 297745, 2011 WL 2497303, at *1-2, (Mich. Ct. App. June 23, 2011)

(footnotes omitted).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief raising the following claims:

> I. [Petitioner's] rights under the 5th and 6th Amendments of the U.S. Constitution were violated and his conviction should be reversed where the requirement that counsel must be appointed at a line-up enunciated in United States v. Wade was not met.
>
> II. [Petitioner] asserts there was insufficient evidence upon which to have convicted him of robbery armed and that his conviction should be reversed.
>
> III. [Petitioner] asserts his Sixth Amendment constitutional right to effective assistance of counsel was denied by counsel's actions.
>
> IV. The sentence was based upon inaccurate information and was disproportionate to the seriousness of the offense and the dangerousness of the offender.

4

> V. Due process requires resentencing where the
> court enhanced [Petitioner's] sentence based on
> facts neither admitted by [Petitioner] nor proven to
> a jury beyond a reasonable doubt. U.S. Const. Am
> VI, IV.

Pet'r's Appellate Br. at 18 (cm/ecf page) (Dkt. 6-5).

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished

opinion. Taylor, 2011 WL 2497303, at *6.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme

Court, which raised the same claims that were raised in the Michigan Court of Appeals, as well

as a claim that his appellate counsel was ineffective for failing to raise a claim of prosecutorial

misconduct.  Pet'r's Br. to Mich. Sup. Ct. at 17-27 (cm/ecf pages) (Dkt. 6-6).  The Michigan

Supreme Court denied the application because it was not persuaded that the questions presented

should be reviewed by the Court.  People v. Taylor, 801 N.W.2d 889 (Mich. 2011).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising

two additional claims.  Pet'r's Mot. (Dkt. 6-7).  The trial court denied the motion for relief from

judgment, 1/18/2012 Order (Dkt. 6-8), but Petitioner apparently did not seek to appeal the order

in the Michigan appellate courts.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard

of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court

must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. (quotation marks omitted).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

## IV.  ANALYSIS

### A.  Petitioner's Substantive Claims

#### 1.  Lack of Counsel at Photographic Line-Up

7

Petitioner first claims that the victim's identification made at the investigative photographic lineup should have been suppressed because Petitioner did not have counsel present during the identification procedure.  Am. Pet. at 15-18 (cm/ecf pages).  Petitioner's claim is without merit.

A criminal defendant has no federal constitutional right to have counsel present at an investigative photographic identification procedure at which he is identified.  United States v. Ash, 413 U.S. 300, 321 (1973); Hanks v. Jackson, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000) (explaining that "although the Sixth Amendment gives a criminal defendant the right to have counsel present at an in-person lineup after the initiation of criminal proceedings against him, there is no corresponding Sixth Amendment right to counsel during a photographic display.").

Therefore, the Court denies Petitioner habeas relief on this claim.

### 2.  Sufficiency of the Evidence

The Court next examines Petitioner's claim that asserts insufficient evidence was presented at trial to establish his identity as the perpetrator.  Am. Pet. at 19-27 (cm/ecf pages). Petitioner supports his argument by pointing to (i) the victim's testimony that he only saw his assailant for one or two seconds, and (ii) the discrepancies between the victim's description of his assailant and Petitioner's actual appearance.  Id. at 22 (cm/ecf page).

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443

U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (internal citation and footnote omitted) (emphasis in the original).

"What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id.  In short, the only inquiry for a federal court reviewing a state-court conviction is to determine whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

Pertinent to Petitioner's claim, the testimony of a single, uncorroborated prosecuting witness, or other eyewitness, is generally sufficient to support a conviction. Brown v. Davis, 752 F.2d 1142, 1144 (6th Cir. 1985).  Attacks on witness credibility are "simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." Moreland v. Bradshaw, 699 F.3d 908, 920 (6th Cir. 2012).

Here, the evidence of Petitioner's identity consisted solely of the testimony of the victim. The victim testified that he saw Petitioner's face for one or two seconds from a distance of three or four feet.  He described his assailant being approximately sixteen years old whereas Petitioner

9

was in his mid-twenties at the time.  There were also discrepancies between the description of the assailant's height and weight compared to Petitioner's.  Despite this, the victim identified Petitioner in a photographic array.  The victim testified that he recognized Petitioner by the shape of his eyes and structure of his face.  While the evidence of Petitioner's identity was certainly not overwhelming, it was sufficient to allow the state courts to reasonably reject the claim for insufficient evidence.  Moreland, 699 F.3d at 920.

Therefore, because the testimony of victim identifying Petitioner as his assailant sufficed to support Petitioner's conviction, the claim is without merit.

### 3.   Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective because he advised him to waive his right to a jury trial and proceed with a bench trial.  Pet. at 28-30 (cm/ecf pages).

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  Id. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  Petitioner bears the

10

burden of overcoming the presumption that the challenged actions were sound trial strategy. Id.
at 689.

To satisfy the prejudice prong under Strickland, Petitioner must show that "there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is
sufficient to undermine confidence in the outcome. Id. On balance, the "benchmark for judging
any claim of ineffectiveness must be whether counsel's conduct so undermined the proper
functioning of the adversarial process that the [proceeding] cannot be relied on as having
produced a just result." Id. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-
assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas
review due to the deference accorded trial attorneys and state-appellate courts reviewing their
performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,'
and when the two apply in tandem, review is 'doubly' so." Harrington, 131 S.Ct. at 788 (internal
and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's
actions were reasonable. The question is whether there is any reasonable argument that counsel
satisfied Strickland's deferential standard. Id.

Here, the Michigan Court of Appeals denied relief with respect to Petitioner ineffective
assistance of counsel claim as follows:

> Defendant also argues that his trial attorney rendered ineffective
> assistance of counsel by "trick[ing]" him into waiving his right to a
> jury trial. We cannot agree.
>
> Because the trial court did not conduct a Ginther hearing, our
> review is limited to errors apparent on the record. People v.
> Williams, 223 Mich. App 409, 414; 566 NW2d 649 (1997).

11

> An affidavit submitted by defendant strongly indicates that defense counsel suggested proceeding with a bench trial rather than a jury trial for strategic reasons. In that affidavit, defendant averred that his trial attorney "stated that it would be in my best interest to take a bench trial because the judge [would] have to go off of facts and by the law." Defendant further averred that his attorney "stated that it would not be in my best interest to take a jury trial because the jury will go off of emotions." Before the beginning of trial, defendant confirmed on the record that he had "freely and voluntarily" waived his right to a trial by jury.
>
> On the record before us, we perceive no evidence that defendant was in any way "tricked" into waiving his right to a jury trial. Defendant's trial attorney was apparently concerned that a jury might be swayed by emotion and convict defendant notwithstanding what he perceived as weaknesses in the complainant's identification testimony. Counsel believed that the trial court, sitting without a jury, would better appreciate any such weaknesses in the identification testimony and would understand that it was legally required to take those weaknesses into account when reaching its verdict. Consequently, counsel recommended that defendant proceed with a bench trial rather than a jury trial. Defense counsel's tactics in this regard were clearly strategic in nature, and were not ineffective merely because they did not work. People v. Stewart (On Remand), 219 Mich. App 38, 42; 555 NW2d 715 (1996).

Taylor, 2011 WL 2497303 at *5 (footnote omitted).

This assessment of Petitioner's claim was not objectively unreasonable. "A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a classic example of strategic trial judgment for which Strickland requires highly deferential judicial scrutiny," particularly on habeas review. Walendzinski v. Renico, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (quotation marks omitted). A defense counsel's advice to a client to waive his right to a jury "constitutes a conscious, tactical choice between two viable alternatives." Id. In the present case, Petitioner's counsel could have reasonably believed that it was better for Petitioner to have a bench trial than a jury trial, and Petitioner has failed to offer any evidence otherwise. Id.; see also Willis v. Smith, 351 F.3d 741, 746 (6th Cir. 2003) ("[The

12

petitioner's] attorney could have reasonably believed that it was better strategy for Willis to be tried by the judge rather than a jury, and [the petitioner] has failed to offer any evidence to the contrary.").

Moreover, Petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. Willis, 351 F.3d at 746. Finally, trial counsel's advice to Petitioner to waive a jury trial did not prejudice Petitioner, where it was unlikely that a jury would have acquitted Petitioner after hearing the same evidence that the trial court judge heard in this case. Walendzinski, 354 F. Supp. 2d at 758. Given the doubly-deferential standard of ineffective assistance of counsel claims reviewed under section 2254, Petitioner has failed to demonstrate entitlement to relief with respect to this claim.

Therefore, the Court denies Petitioner relief on this claim of his habeas petition.

### 4. Sentence Based on Facts not Proven to a Jury Beyond a Reasonable Doubt

Petitioner claims in the caption of his final issue that his sentence was improperly based upon facts not admitted by him or determined by the jury. Pet'r Br. at 31 (cm/ecf page). In support of his argument, Petitioner states that he "recognizes that the Michigan Supreme Court has decided in People v. Drohan," 715 N.W.2d 778 (Mich. 2006), that Blakely v. Washington, 542 U.S. 296 (2004), "does not govern the Michigan sentencing guidelines." Pet'r Br. at 31 (cm/ecf page). Petitioner then argues (i) that Drohan was wrongly decided, (ii) that this Court should follow the North Carolina Supreme Court in State v. Allen, 615 S.E.2d 256 (N.C. 2005), and (iii) that under Blakely v. Washington, 542 U.S. 296 (2004), he should be re-sentenced. Pet'r Br. at 31-33 (cm/ecf pages). Petitioner does not direct the Court to any portion of the

record in his summation of the facts or in his argument where the state trial court improperly sentenced Petitioner.

Like Petitioner's other claims, this one is also meritless. In <u>Blakely</u>, the Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. <u>Blakely</u>, 542 U.S. at 301. <u>Blakely</u> involved Washington State's determinate-sentencing structure, under which a judge determined that the petitioner should have a sentence longer than the statutory maximum. Determinate-sentencing structures, such as the one in <u>Blakely</u>, contrast with Michigan's indeterminate-sentencing structure for most crimes, including those for which Petitioner is imprisoned. <u>See</u> <u>Montes v. Trombley</u>, 599 F.3d 490, 497 (6th Cir. 2010) ("Michigan's sentencing scheme . . . is properly described as 'indeterminate.'"). The maximum term of imprisonment is set by law, not by a judge. <u>People v. Drohan</u>, 715 N.W.2d 778, 789 (Mich. 2006) (citing Mich. Comp. Laws § 769.8). Indeterminate sentencing schemes do not violate the Sixth Amendment by invading the province of the jury, so long as the defendant is sentenced within the statutory maximum. <u>Blakely</u>, 542 U.S. at 304-305, 308-309.

In this case, this Court must follow the precedent set forth by the Sixth Circuit, which has followed <u>Drohan</u>, not a decision of another state's supreme court, such as <u>Allen</u> suggested by Petitioner. <u>Montes</u>, 599 F.3d at 497 ("Michigan's sentencing laws similarly create an indeterminate-sentencing scheme. And because this scheme is indeterminate, it does not violate" due process rights or the right to a jury trial) (citing <u>Blakely</u>, 542 U.S. at 309-310). Furthermore, the sentencing court did not exceed the statutory maximums for Petitioner's crimes and, therefore, the sentencing court did not have the constitutional obligation to submit the sentence

14

to a jury to be proved beyond a reasonable doubt.  Id.  Simply put, Petitioner's sentences did not

violate the Sixth Amendment and Petitioner's reliance on Blakely is misplaced.

Therefore, the Court denies Petitioner habeas relief on this claim.

### 5.   Different Theory of Guilt

Petitioner filed a second motion for leave to amend his petition on November 5, 2013,

seeking to add a new claim to his petition regarding the theory of guilt relied upon by the trial

court, see Pl. Mot. to Am. (Dkt. 12), which the Court subsequently granted.  6/10/2014 Order

(Dkt. 17).

The criminal information charged Petitioner with committing armed robbery with a

handgun.  After the bench trial, however, the trial court determined that Petitioner was not guilty

of the felony-firearm offense, because the evidence did not support that a firearm was "recovered

or fired."  3/24/2010 Tr. at 92 (Dkt. 6-3).  The trial court stated that, because no real weapon was

found, the possibility remained that Petitioner used a fake weapon to rob the victim.  Id. at 93.

As a result, the trial court found Petitioner guilty of armed robbery on the ground that he may

have used an article fashioned as a dangerous weapon, but not guilty of felony-firearm.  Id. at 98-

99.  Petitioner asserts that, because he was specifically charged with committing armed robbery

with a handgun, he was denied his right to notice of the theory of guilt relied upon by the trial

court. Pet'r Br. at 1 (Dkt. 12).  Petitioner admits in his motion that he never presented this claim

to the state courts.  Id. at 2.

The Court finds that Petitioner claim lacks merit.  First, Petitioner admits that this claim

is unexhausted.  Habeas relief may not be granted on an unexhausted claim.  28 U.S.C. §

2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that the applicant

has exhausted the remedies available in the courts of the State.").  Nevertheless, Petitioner's due-process right to notice of the crime he was charged with was not violated by the trial court's reliance on a theory different from the one contained in the criminal information.

There are two classes of modifications to charging instruments: a variance and a constructive amendment.  A variance "occur[s] when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."  United States v. Combs, 369 F.3d 925, 935-936 (6th Cir. 2004).  Constructive amendments, in contrast, "are variances occurring when an indictment's terms are effectively altered by the presentation of evidence and jury instructions that so modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment."  Id. at 936 (citation and quotation marks omitted) (alteration in original).  A defendant who demonstrates a constructive amendment is entitled to virtual automatic reversal of his or her conviction, whereas a defendant who establishes only that a variance has occurred must further demonstrate prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.  Combs, 369 F.3d at 935-936; United States v. Barrow, 118 F.3d 482, 488-489 (6th Cir. 1997).

In United States v. Prince, 214 F.3d 740 (6th Cir. 2000), the Sixth Circuit explained that the existence of a constructive amendment turns on whether additional evidence and instructions presents the jury with another crime or whether they are "merely two alternative methods by which the one crime . . . could have been committed."  Id. at 758.  If the differences simply "provided an alternative method" of proving the single offense, there is no constructive amendment, and the defendant must demonstrate prejudice.  Id.

16

Under Michigan law, the crime of armed robbery requires a robbery committed with "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon." Mich. Comp. Laws § 750.529. Accordingly, the fact that the trial court relied on evidence that Petitioner either used an article fashioned as a dangerous weapon, or represented that he had a dangerous weapon, rather than actually possessing a handgun as indicated in the criminal information, did not constitute a constructive amendment of the charge. See United States v. Hartz, 458 F.3d 1011, 1021-1022 (9th Cir. 2006) (language in indictment that described particular weapons in charging use of firearm during crime of violence and being felon in possession of firearm was mere surplusage, rather than an essential element of the crimes). Rather, it involved only a variance in the manner in which the elements of the offense could be proven, for which Petitioner has not demonstrated any prejudice. Petitioner's defense at trial was one of mistaken identity; he did not argue in state court — and he does not argue here — that he was guilty only of unarmed robbery, or somehow could have mounted a different defense if he had known that he might be found guilty under the theory relied upon by the trial court.

Therefore, the Court finds that this claim is without merit.

### B.  Certificate of Appealability and Leave to Proceed In Forma Pauperis

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists

17

would find the district court's assessment of the constitutional claim debatable or wrong.  See

Slack v. McDaniel, 529 U.S. 473, 484 (2000).   "A petitioner satisfies this standard by

demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."   Miller-El, 537 U.S. at 327.   In applying that standard, a

district court may not conduct a full merits review, but must limit its examination to a threshold

inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court

must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United

States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a

substantial showing of the denial of a constitutional right, and reasonable jurists could not

conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Accordingly,

a certificate of appealability is not warranted in this case.  The Court also denies Petitioner leave

to appeal in forma pauperis, because any appeal would be frivolous.  See, e.g., Dell v. Straub,

194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

## V.  CONCLUSION

Accordingly, the Court denies the amended petition for a writ of habeas corpus with

prejudice (Dkt. 9).  The Court also declines to issue a certificate of appealability, and denies

Petitioner permission to proceed on appeal in forma pauperis.

SO ORDERED.

Date:   August 20, 2015                         s/Mark A. Goldsmith
        Detroit, Michigan                       MARK A. GOLDSMITH
                                                United States District Judge

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2015.

<u>s/Carrie Haddon</u>
Case Manager

19